# GORDON C. ANDREWS, EXECUTOR (ESTATE OF JOHN STARK GORBY) *v.* JOHN THOMAS GORBY ET AL.
## (15288)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued January 16—officially released May 14, 1996

*William A. Phillips*, with whom, on the brief, was *David N. Levine*, law student intern, for the appellant (plaintiff).

*William J. Wenzel*, for the appellee (named defendant).

BERDON, J. The following three issues are raised in this appeal: (1) whether the Superior Court employed the correct standard of review on appeal from the Probate Court; (2) whether the Probate Court and the Superior Court on appeal therefrom are bound by a testator's direction in his will that the executor of his estate, who drafted the will, be compensated in accordance with a specified fee schedule; and (3) whether the attorney for the decedent's estate is required to maintain time records in order to receive compensation for legal services performed for the estate.

The plaintiff, Gordon C. Andrews, is the executor of the estate of the decedent and testator, John Stark Gorby (testator). The plaintiff also acted as the attorney for the estate. The named defendant, John T. Gorby,[1] is the son of the testator and a beneficiary of his estate. In the final account of the estate, the plaintiff sought credit and an allowance in the amount of $45,898.31 as an executor's fee and $28,064 as an attorney's fee. The Probate Court for the district of Fairfield, after a hearing, allowed the plaintiff an executor's fee in the amount of $28,000 and disallowed his request for an attorney's fee. The plaintiff appealed from the Probate Court's decision to the Superior Court[2] pursuant to General

---

[1] Allan A. Crystal, the commissioner of revenue services, was also named as a defendant. Although the commissioner participated in the trial before the Superior Court, he did not take part in this appeal. Hereinafter, references to the defendant are to John T. Gorby.

[2] The plaintiff filed two separate appeals from the decree of the Probate Court: one from the order allowing him the executor's fee and the other from the order denying a fee for his services as an attorney. The Superior Court consolidated the appeals.

Statutes § 45a-186.[3] The Superior Court affirmed the Probate Court's orders and, accordingly, awarded the plaintiff $28,000. The plaintiff appealed from the judgment of the Superior Court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the Superior Court and order a new trial.

I

We first address the Superior Court's standard of review on an appeal from a decision of the Probate Court. Prior to this court's decision in *Prince* v. *Sheffield*, 158 Conn. 286, 259 A.2d 621 (1969), our rule with respect to this standard of review was dependent upon the subject matter of the appeal. Ordinarily, an appeal from a decision of the Probate Court was "a trial de novo . . . . [T]he superior court decide[d] the matters on which the appeal was taken without regard to the action or decree of the probate court." Id., 294. In certain instances when the Probate Court was vested with "primary jurisdiction," however, the standard of review was limited to a determination of whether the court had abused its discretion. *Willard* v. *McKone*, 155 Conn. 413, 414–15, 232 A.2d 322 (1967) (removal of trustee was primarily invested in Probate Court and on appeal

---

[3] General Statutes § 45a-186 provides: "Appeals from probate. Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the superior court for the judicial district in which such court of probate is held, except that any appeal under subsection (b) of section 12-359 or subsection (b) of section 12-367 shall be filed in the judicial district of Hartford-New Britain. Except in the case of an appeal by the state, such person shall give security for costs in the amount of one hundred fifty dollars, which may be paid to the clerk, or a recognizance with surety annexed to the appeal and taken before the clerk or a commissioner of the superior court or a bond substantially in accordance with the bond provided for appeals to the supreme court. Appeals from any decision rendered in any case after a record is made under sections 51-72 and 51-73 shall be on the record and shall not be a trial de novo."

Superior Court was limited to determining whether Probate Court abused its discretion). As a result of this deference, the cases understandably led to "real uncertainty as to what probate decrees are within the discretionary jurisdiction of the probate court so as to fall within the limited appeal rule." *Prince* v. *Sheffield*, supra, 296. Consequently, we held in *Prince* "that any discretion of the probate court, even though it has been denominated in our cases as sound or primary or exclusive, or as existing in the first instance, passes to the superior court on appeal and is to be exercised by it in an independent determination, without regard to the result reached by the probate court." Id., 299.

In 1982, the legislature enacted No. 82-472 of the 1982 Public Acts, which revised the Superior Court's standard of review of Probate Court decisions by adding the following language to § 45a-186:[4] "Appeals from any decision rendered in any case after a record is made under sections 51-72[5] and 51-73[6] shall be on the record and shall *not* be a trial de novo." (Emphasis added.) In

---

[1] See footnote 3.

[5] General Statutes § 51-72 provides: "Probate court; stenographer may be called in by agreement. Whenever, in any court of probate, the parties or their attorneys so agree in writing, the judge of the court may call in a competent and disinterested person who is capable to act as a stenographer to act as the official stenographer in the whole or in such portion of the cause or matter as may be agreed upon. The compensation of the stenographer shall be paid by the parties in such proportion as the judge of the court decides, except that the compensation shall not exceed that of the official court reporter of the superior court."

[6] General Statutes § 51-73 provides: "Powers and duties of stenographer. Notes to be evidence. Appeals on record. Each stenographer called in and acting under the provisions of section 51-72 shall be sworn and shall have the powers and be subject to the duties prescribed by law for the official court reporter of the superior court. Evidence taken by any such stenographer shall have the same effect and be evidence to the same extent as evidence taken by the official court reporter of the superior court. Appeals from any decision rendered in any case after a record is made under this section and section 51-72, shall be on such record and shall not be a trial de novo."

other words, § 45a-186 provides that if a record, including a transcript, of the testimony was made before the Probate Court pursuant to §§ 51-72 and 51-73, the Superior Court shall review the decree of the Probate Court using an abuse of discretion standard.

In the present case, the parties do not dispute the fact that no record was made before the Probate Court. The absence of a record requires a trial de novo. See *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991); *Prince* v. *Sheffield*, supra, 158 Conn. 298–99. Although the Superior Court heard evidence pertaining to the fees, that court did not, in rendering its decision, exercise "an independent determination, without regard to the result reached by the probate court." *Prince* v. *Sheffield*, supra, 299. Instead, the Superior Court found that although the plaintiff's requested executor's fees were unreasonable, the Probate Court's decision with respect to the amount awarded was entitled to due deference.[7] The trial judge of the Superior Court stated in his memorandum of decision that although the court "generally reviews the decision of the Probate Court de novo, the fixing of fees is primarily the function of the probate courts. Absent an agreement by the parties—and there is no such agreement here—the Superior Court cannot fix such fees. It can only determine whether the Probate Court abused its discretion." The Superior Court then concluded that the Probate Court had not abused its discretion in fixing the plaintiff's fee as executor at $28,000 and in awarding no fee to him as an attorney for the estate, and rendered judgment in favor of the plaintiff for the same amount.

The conclusion of the Superior Court with respect to executor's and attorney's fees was not based upon

---

[7] See footnote 8. The Superior Court made no finding with respect to attorney's fees, but simply deferred to the Probate Court's decision to award no attorney's fees.

an independent assessment of the facts established in the two day trial before that court. We are therefore required to reverse the decision of the Superior Court and to remand the case for a new trial.

## II

Because this case must be retried before the Superior Court, we address the two other issues raised and argued by the parties. These are, again: whether the Probate Court and the Superior Court on appeal therefrom are bound by a testator's direction in his will that the executor of his estate, who drafted the will, be compensated in accordance with a specified fee schedule; and whether the attorney for the decedent's estate is required to maintain time records in order to receive compensation for legal services performed for the estate.

Although the Superior Court heard evidence for two days and filed a lengthy memorandum of decision, its factual findings were limited to the conclusion that "the requested executor fees of $45,898.31 in the present case *would not be just and reasonable.*"[8] (Emphasis added.) We look to the transcript in order to put these issues within a factual context.

The plaintiff is an attorney admitted to practice in Connecticut. During the period for which he sought compensation, he was employed full-time as general

---

[8] The trial court based this conclusion on the following: "This is not a particularly sizeable estate, requiring considerable work or responsibility. The gross estate is valued $839,939. Notably, corporate executors have commonly and customarily charged fees of two or three percent of the estate. *Wolfgang* v. *Cowell*, Superior Court, judicial district of Stamford-Norwalk, [Docket No. CV860084829S (October 30, 1990, 2 Conn. L. Rptr. 730, 733)]. The requested fees of $45,898.31 in this case far exceed the fees calculated pursuant to those percentages. Two percent of the gross estate of $839,939 is $16,798.78; three percent is $25,198.17. *There was no evidence presented of special circumstances or difficulties that would entitle the plaintiff to the requested executor fees.*" (Emphasis added.)

counsel for a corporation in Woodbridge, New Jersey. He also engaged in private practice, providing legal services for friends and neighbors for a fee.

The plaintiff was the testator's neighbor for fourteen years, during which time they formed, according to the plaintiff, a "very close" relationship. The plaintiff first provided legal services to the testator when he probated the estate of the testator's wife when she died in 1986, at which time he also assisted the testator with his duties as executor. The plaintiff charged the testator $1000 for these services. At that time, the testator was eighty years old and had a will in which the plaintiff was not named as either trustee or executor. The plaintiff subsequently prepared a new will and two codicils for the testator.[9] The new will, executed in February, 1987, named the defendant as executor and appointed Union Trust Company as trustee and successor executor. The only direction regarding compensation was that the trustee "shall be entitled to the compensation to which testamentary trustees shall be from time to time entitled under the laws of the State of Connecticut."

The first codicil, executed in October, 1987, named "my good and loyal neighbor," the plaintiff, as both executor and trustee. The defendant was named as successor executor, and the Union Trust Company as successor trustee. It also contained a provision that provided that the "[e]xecutor . . . shall be entitled to compensation in accordance with fees then payable for Estate Settlement services as published by said UNION TRUST COMPANY in its then effective Personal Trust Fee Schedule [fee schedule] . . . ." Under the fee schedule, the executor's fee was to be calculated as a percentage of the estate's valuation for federal estate

---

[9] The plaintiff also provided the testator with other estate planning legal services, such as the drafting of an inter vivos trust and a gift giving program.

tax purposes.[10] The second codicil, executed in October, 1988, also named "my good and loyal neighbor," the plaintiff, as both executor and trustee, and further gave the plaintiff the power of appointment to name a successor executor and trustee.[11]

The testator died in March of 1989. His estate was admitted to probate on April 6, 1989, with the plaintiff acting as executor. The estate consisted of a gross estate valued at $748,656 and assets reported for tax purposes of $614,621. At the close of the probate proceedings, the plaintiff submitted an accounting to the Probate Court seeking approval of executor's and attorney's fees, each for approximately $28,000. The defendant objected to the requested fees. In response, the plaintiff raised his fee request for executor fees to the full amount provided for in the fee schedule, or $45,898.31.[12] The Probate Court approved an executor's fee of $28,000, but did not award any attorney's fees. The plaintiff appealed from that decision to the Superior Court.

The plaintiff testified before the Superior Court that he did not believe that he had ever discussed with the testator[13] the magnitude of the executor's fee under the

---

[10] The gross estate was valued at $748,656, while the assets reported for tax purposes were $614,621, for a total of $1,363,277, against which the executor's fee was calculated. According to the fee schedule, the fee was calculated at the rate of 4 percent on the first $500,000, and 3 percent on the next $863,277, for a total fee of $45,898.31.

[11] Notwithstanding the defendant's testimony that the second codicil was drafted to address his concerns regarding the financial impact of the fee schedule on the estate, that codicil included the same fee schedule.

[12] See footnote 10.

[13] There is some dispute between the plaintiff and the defendant over the content of such conversations. The defendant testified that shortly before the testator's death, the defendant had a conversation with the plaintiff during which the plaintiff promised that his fees as executor of the estate would be minimal, "on the order of $3000." The plaintiff testified that he told the defendant that his fees would be reasonable, but that he "had no idea basically what they were going to be." The plaintiff testified that, at the time of his conversation with the defendant, he had submitted a bill for

fee schedule or how attorney's fees associated with the probate of the testator's will would be calculated. The plaintiff did not present evidence such as time records[14] or documents showing the nature or extent of his services either as executor or attorney. With respect to his executor's fee claim, the plaintiff testified that he "claimed the full executor's fee pursuant to the Union Trust schedule." He also testified as to the nature and extent of his duties both as executor and as attorney.

## A

With respect to the testamentary direction on fiduciary fees, we address the narrow question of whether the Probate Court and the Superior Court on appeal are bound by the direction of the testator in a will prepared by the named executor.

We begin our analysis with the fiduciary relationship between the lawyer who drafts the will and the testator. This relationship falls within the attorney-client sphere, and thus raises the concerns typically found in that area. "The judicial system has a significant interest in regulating attorneys and the attorney-client relationship. . . . In so doing, courts have been mindful that the relationship between an attorney and client must involve personal integrity and responsibility on the part of the lawyer and an equal confidence and trust on the part of the client. . . . The relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith." (Citations omitted; internal quotation marks omitted.) *Matza* v. *Matza*, 226 Conn. 166, 183–84, 627 A.2d 414 (1993).

---

$3000 to the testator for legal services, which may have been "the source of [the defendant's] understanding that [the plaintiff said he] was going to charge $3000 for estate legal work."

[14] The plaintiff admitted that he did not keep time records for his services.

This fiduciary relationship has always demanded a high degree of scrutiny. For example, we have held with respect to the attorney-client relationship in general that "[p]roof of a fiduciary relationship therefore imposes a twofold burden upon the fiduciary. Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof . . . by clear and convincing evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987).

The necessity for heightened scrutiny is highlighted by the facts of this case. The eighty year old testator and the plaintiff were good friends. The testator and his wife had been married for sixty years and, as the plaintiff testified, the testator "was a very dedicated husband." The defendant characterized the testator as "kind of adrift" after his wife's death. The plaintiff had acted as the attorney for the estate of the testator's wife, and had assisted the testator with his duties as executor, for which services the plaintiff charged $1000. The will and the two codicils, which directed that the plaintiff be named executor and granted him the power of appointment for successor executors and trustees, were drafted by the plaintiff and executed by the testator during the period following his wife's death. While these events may reflect a well placed trust, and even though in this case the plaintiff assumed these fiduciary duties against his wishes at the testator's insistence,[15] the fiduciary relationship is the overriding consideration.[16]

---

[15] The defendant acknowledged that the plaintiff had been reluctant to assume the duty of trustee of the estate, undertaking the responsibility only "because of his warm friendship" with the testator.

[16] The plaintiff relies on cases from several other jurisdictions for his argument that the court is bound by the testator's direction. *Patterson* v.

Further, although ostensibly the plaintiff was not a beneficiary under the will, compensation in excess of that which is reasonable is, in the words of the Superior Court, "the functional equivalent of a bequest to the plaintiff." If the testator had wanted to make such a bequest to his attorney who drafted the will, he would have so provided in the will. Therefore, we conclude that the testator intended to provide a measure of reasonable compensation for the executor, and not a bequest.

We conclude that, as a matter of public policy, an attorney who drafts a will that names the attorney as executor and contains a fee schedule for his compensation as executor is limited to reasonable compensation, irrespective of the schedule.[17] We note, however, that

*Harris,* 267 Ark. 1072, 1074, 593 S.W.2d 489 (Ark. App. 1980) (upheld testatrix' direction for executor's "reasonable compensation of ten per cent (10%) of the total gross estate as finally determined for federal estate tax purposes"); *In re Estate of Quirin,* 119 N.H. 206, 207, 399 A.2d 978 (1979) (" 'a testatrix' intent is the sovereign guide to interpreting her will,' " which includes executor's fees); *In re Estate of Loutsion,* 344 Pa. Super. 477, 479, 496 A.2d 1205 (1985) (express provision for amount of executor's compensation made by testator and accepted by executor is binding on all parties); *American Jewish Joint Distribution Committee* v. *Eisenberg,* 194 Md. 193, 198–99, 70 A.2d 40 (1949) (testator has right to specify executor's fee in excess of "statutory commissions, either in the form of a bequest or by means of larger commissions than are allowed by the statute"); *In re Estate of Roots,* 596 S.W.2d 240, 243 (Tex. Civ. App. 1980) (testator has right and power to select executor and to determine compensation).

In those cases, however, there is no indication that the attorney who drafted the will also served as executor. They therefore fail to address the significant public policy concerns surrounding the fiduciary relationship between an attorney and a testator, where that attorney benefits directly from the will as executor. We are presented with a very different set of facts, involving policies other than the well recognized rule that testamentary intent, where clearly expressed, be followed by courts. *Canaan National Bank* v. *Peters,* 217 Conn. 330, 337, 586 A.2d 562 (1991).

[17] We have defined reasonable compensation in this context as "what is fair in view of the size of the estate, the responsibilities involved, the character of the work required, the special problems and difficulties met in doing the work, the results achieved, the knowledge, skill and judgment required of and used by the executors, the manner and promptitude in which the estate

a testator may have a reasonable expectation that such a fee schedule establishes a maximum limit on executor's fees. Therefore, a reasonable fee may not exceed the amount provided in such schedule. Further, the burden rests on the attorney to prove the reasonableness of the compensation requested by a preponderance of the evidence.[18]

## B

The Superior Court made no award of attorney's fees, finding that the Probate Court did not abuse its discretion when it denied attorney's fees because the plaintiff had failed to maintain time records for services provided as an attorney. As we stated in part I of this opinion, where there is no record of the probate pro-

has been settled and the time and service required, and any other circumstances which may appear in the case and are relevant and material to this determination." *Hayward* v. *Plant*, 98 Conn. 374, 385, 119 A. 341 (1923); see *DiSesa* v. *Hickey*, 160 Conn. 250, 266, 278 A.2d 785 (1971). In *DiSesa*, the will that was drafted by the attorney executor provided that the executor be compensated at the rate of "fifteen percent (15%) of the gross inventory of [the] estate." *DiSesa* v. *Hickey*, supra, 265. The issue raised in that case was not whether the court was bound by the testator's clearly stated intent as to executor's fees but, rather, whether the provision disclosed the testator's intent. Noting that "gross inventory" was not a term defined in either the General Statutes or the case law at the time, this court held that "it [was] impossible to determine what the testator meant by the words." Id. The court therefore concluded that, "[u]nder the circumstances, the indefinite instruction concerning the computation of fees to be paid to the executor must be disregarded and that fee be computed upon the usual basis of reasonable compensation under the circumstances for the services rendered. *Hayward* v. *Plant*, [supra, 374]." *DiSesa* v. *Hickey*, supra, 266. Because of the public policy considerations in this case, we similarly disregard the fee schedule for purposes of determining reasonable compensation.

[18] The defendant also claims that the fee schedule violates the Statute of Wills; General Statutes § 45a-251; because the fee schedule itself was not set forth in the will but, rather, was an extrinsic document, and therefore it was impossible to determine within the four corners of the will the testator's intent as to executor's fees. Because of our decision that the fee schedule cannot be utilized as a basis for determining the plaintiff's reasonable compensation, we do not reach the issue of whether the fee schedule referred to in the will upon which the plaintiff relies violates the Statute of Wills.

ceeding, no deference is due the Probate Court's decision. Rather, the Superior Court is required to make a de novo and independent determination of whether an attorney's fee should be awarded and, if so, the reasonable amount of that fee.

Time spent is but one factor in determining the reasonableness of an attorney's fee.[19] Although the better practice is for an attorney for the estate to maintain time records, the failure to do so does not preclude the court from determining and awarding an attorney's fee. Indeed, as we recently stated: " 'Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described.' *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 680, 443 A.2d 486 (1982). '[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues.' " *Miller* v. *Kirshner,* 225 Conn. 185, 201, 621 A.2d 1326 (1993). The Superior Court should, therefore, have considered whether an attorney's fee should have been awarded and, if so, the reasonable amount of that fee.

---

[19] Rule 1.5 of the Rules of Professional Conduct, entitled "Fees," provides in pertinent part: "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent. . . ."

The fact that the plaintiff in this case occupied a dual position of both

## III

We conclude in summary: (1) that, in the absence of a record, the Superior Court on appeal from a decision of the Probate Court must determine the issue of reasonable executor's and attorney's fees de novo; (2) that the Probate Court and the Superior Court on appeal are not bound by the testator's direction in his will that the executor, who drafted the will, be compensated in accordance with a specified fee schedule but, rather, must order reasonable compensation not to exceed that provided for in the schedule; and (3) that an executor who also acts as the attorney for the estate is not precluded from reasonable attorney's fees solely because he failed to keep time records for his services.

The judgment is reversed and the case is remanded to the Superior Court for a new trial.

In this opinion the other justices concurred.

executor and attorney must be considered in order to assure that he is not compensated twice for the same services.