[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs appeal from a decree of the Probate Court for the District of Andover approving the administrator's accounting in the above entitled estate and more specifically objecting to the award of Administrator's fees in the amount of $18300.
Law
In the absence of a record, including a transcript of testimony, the Superior Court, on appeal must determine the issue of reasonable administration fees de novo. The Superior Court, in the absence of a record as in this case, must make an independent assessment of the evidence and reasonably determine the fees to be awarded. No deference is due the decision of the Probate Court. Andrews v. Gorby, 237 Conn. 12, 24 (1996).
Aggrievement
The plaintiffs Morris Silverstein and Samuel Silverstein are CT Page 1160 heirs of the estate with legal interests affected by the decree and are aggrieved. Connecticut General Statutes § 45a-186.
Discussion
This estate has been open since 1969. The named plaintiff, Morris Silverstein, acted as administrator of the estate from March 8, 1969 through October 31, 1989, when he was removed as administrator for the improper performance of his duties. He appealed from the order removing him. His appeal was dismissed in the Superior Court and the judgment of the Superior Court was later affirmed by the Appellate Court. Morris Silverstein'sAppeal from Probate, 24 Comn. App. 818 (1991).
Morris Silverstein later appealed from a decree of the Probate Court approving his final accounting after his removal as administrator. That appeal was dismissed in the Superior Court and the decision subsequently affirmed by the Appellate Court.Morris Silverstein's Appeal from Probate, 29 Conn. App. 904
(1992). (Pet. Cert. Denied 224 Conn. 919).
In the current appeal, the plaintiffs have set forth 17 reasons for appeal. These will be discussed in the order listed by the plaintiffs.
1. Preservation of estate assets should have been the administrator's primary goal. His inattentiveness and lack of diligence subjected the estate to great risk and diminution. Losses suffered by the estate were occasioned by the administrator's mismanagement of estate assets and by his failure and neglect to perform his duties. He breached his duty to handle the estate in a careful manner and he should be surcharged for any resultant losses.
It is axiomatic that the trier determines the credibility of the witnesses. The trier determines which portion, if any, of any witnesses' testimony is believable or credible; taking into account any number of factors including the witness' demeanor or manner while testifying; his interest in the outcome of the case; his bias or prejudice concerning matters involved in the case; and the reasonableness of the witness' testimony in light of other evidence, for some examples.
Reason of appeal number one is a generalized statement. Suffice it to say the evidence advanced by the plaintiffs do not support this claim. The administrator did not mismanage the CT Page 1161 estate but, rather, took over the administration of an estate with little liquid assets, an estate consisting largely of real estate in deplorable condition. The Court concludes he did a competent job in administering this estate under very difficult circumstances which included a complete lack of cooperation from the plaintiff Morris Silverstein, who had been the previous administrator.
2. The administrator failed and neglected to keep the property fully rented and did not use his best efforts to find and keep tenants for the property.
The residential units involved in the estate property were really unhabitable and could not have been rented on the open market. Despite the condition, the administrator was able to rent two units for a nominal rental. It was advantageous to have some tenancy there as without any tenants the property would be more prone to vandalism, or theft. One of the tenants, Adam Majowicz, was able to take care of minor emergency repairs in lieu of rent, also to the advantage of the estate because there was woefully insufficient income with which to make even modest repairs: These were buildings that were beyond rehabilitation.
In addition, the administrator did rent curbside space to a flower vendor which brought in almost $1200.
The administrator did, in fact, manage to get some tenant income on property that was uninhabitable.
3. The administrator neglected to repair, maintain, or keep the property clean, picked-up, and in a rentable atmosphere.
This property, at the time the administrator took charge of it, was beyond rehabilitation and in deplorable condition. He made emergency repairs as funding allowed, but he had to constantly prioritize his maintenance efforts. Further, when the tenant, Majowicz, tried to make repairs, he was met with antagonism by the plaintiff Morris Silverstein who actually told Majowicz to stop making repairs. The administrator did all he reasonably could under the circumstances and given the limited resources. For example, Majowicz spent four to five months (part-time) taking down a two-story barn on the property at the order of the building inspector as it was unsafe.
4. Due to the administrator's neglect and mismanagement, rental incomeCT Page 1162 from the tenants was lost. The fiduciary should be surcharged for such losses.
The administrator accounted for all rental income in his accounting. His testimony as to the amounts of rentals and from whom they were received was credible. This claim is without merit.
5. The administrator allowed estate property to be used for personal purposes and neglected to charge fair market rental value for rental units. He should be surcharged the differences between such value and the lesser amounts that were charged.
This claim is discussed above. The administrator was effective in getting anyone to inhabit this property. It had no rental value as residential units. That he managed to collect as much as he did is a positive, not a negative result. There was a commercial tenant in one of the buildings, an upholstery shop, which remained as a tenant for a period of time at the prior rental amount.
6. The administrator neglected or refused to settle the estate within a reasonable time after a Connecticut Supreme Court decision dated December 3, 1992 ended the appeal process for an heir's claim against the estate. Instead, he kept the estate open and going and continued to administer it for personal purposes for the next 1 1/2 years. Therefore, no fiduciary fees should be allowed for the years 1993 and 1994.
The administrator did not unreasonably delay the closing of the estate. There were ongoing discussions as to possibly selling the property. In view of the total time this estate has been open, the Court determines it was reasonably concluded.
7. The administrator neglected to secure the buildings of the estate, thereby causing loss of property of the estate. He should not be allowed to take credit for sums so paid as set forth in his account and should be surcharged for such losses.
This claim is without merit. The administrator made reasonable efforts to keep the buildings secure. There was no credible evidence otherwise.
8. The administrator neglected to collect rents from tenants and should be surcharged for same.
CT Page 1163
The administrator's testimony, which the Court credits, as to the amount of rental received, from whom received and the periods of time covered refutes this claim.
9. The administrator neglected to report all of the rents received from the tenants, and he should be surcharged for same.
This allegation was not proven. See Nos. 8 and 4 above.
10. The administrator paid expenses for tenants when he should not have. He should not be allowed to take credit for such expenses as listed in his account.
There was no credible evidence to support this claim. The administrator explained the expenses to the estate to the satisfaction of the Court.
11. The administrator neglected to pay some estate expenses on time and thereby incurred extra cost to the estate. He should not be allowed to take credit for such extra expenses as listed in his account.
The administrator had to make value judgments with the limited resources available to him. In some instances, he made emergency repairs (for example — to a septic system), and did not have sufficient funds to pay real estate taxes on time. Where late charges were incurred, they were not due to negligent mismanagement but to practicalities. This claim is without merit.
12. The administrator incurred expenses and spent time with respect to the sale of real estate without the required prior written approval of the probate court. He should not be allowed to take credit for sums so paid or fees so claimed, as set forth in his account.
There was no credible evidence that the administrator improperly billed the estate for work not reasonably connected to the administration of the estate. This claim is without merit.
13. The administrator was negligent in maintaining the property, thereby causing extra expense to the estate. He should not be allowed to take credit for such extra expense as listed in his account.
This claim is discussed earlier. See answers to claims Nos. 1 and 3.
14. The administrator failed to keep the estate's money deposited inCT Page 1164 interest bearing accounts, thereby causing the estate added expense and loss of income. He should be surcharged for such loss of interest income and not be allowed to take credit for such added expense as listed in his account.
There is presently some $1740 in a fiduciary estate account in the Bank of Boston. Because of this appeal the money cannot be distributed. Under the circumstances of this case, where there was usually very little money the administrator acted reasonably in opening a standard fiduciary account.
15. The administrator neglected to properly manage the affairs of the estate, wrongfully considered his own best interests above and ahead of those of the heirs and the estate, incorrectly paid himself for his services without prior written probate court approval, and excessively charged the estate for such services. Such excesses far exceed the reasonableness of compensation for fiduciaries and attorneys and he should not be allowed such excessive amounts as so claimed.
There is no merit to this claim. The Probate Court previously approved $15000 in legal fees. The administrator kept a detailed time sheet to substantiate his billing. The administrator is an attorney with considerable Probate experience. He billed at a modest $125 per hour plus $200 per month for property management. His bill is not excessive.
16. The request to place two mortgages of $6,876.55 each plus 10% interest per year, on the Columbia, Connecticut property of the estate, and the decree authorizing the issuance of two notes in conjunction therewith, should be denied and disallowed. The necessity for such actions is non-existent. Heir Morris Silverstein submitted to the probate court a list of estate expenses that he had paid on behalf of the estate and which far exceeded the amount in question. The probate court did not pass judgment on this list before issuing its decree and such action by the probate court is prejudicial against said heir. By requesting and receiving such actions, the administrator has breached his duty of impartiality. Therefore, the respective heir requests that this court consider this list of payments in its deliberations of this probate appeal.
This claim is disallowed. It appears from a review of the file that the Probate Court did, in fact, decide this issue in September 1994 when it approved the administrator's application to grant the mortgages to Dorothy Mitchell and Samuel Silverstein. This plaintiff alleges that he submitted a list of CT Page 1165 contributions he paid on behalf of the estate at that time. By approving the mortgages as requested, the Probate Court tacitly disapproved Morris Silverstein's claim, if it did not do so explicitly. The mortgages were approved to equalize the distribution to the heirs and represent amounts surcharged to Morris Silverstein by earlier court orders. The heirs are entitled to those moneys at the statutory rate of interest.
The present appeal from the final accounting was filed on March 23, 1995. Apparently the plaintiff now seeks this Court revisit the 1994 order of the Probate Court. The final accounting is not, however, the appropriate time to make claims against the estate. The plaintiff should have submitted any claims to the successor administrator for his approval or disapproval. Apparently he did not do so, but to the extent they were filed in 1994, he should have appealed that decree within thirty days. Connecticut General Statutes § 451-187.
17. Heir Samuel Silverstein, likewise, submitted to the probate court a claim for recognition of taxes payed on behalf of the estate in the amount of $4,361.15. Hereto, the probate court did not pass judgment on it before issuing its decree. Accordingly, said heir hereby requests that this payment be taken into account by this court in its deliberations of this probate appeal.
See answer to No. 16 above. These claims are not properly before the Court in an appeal from a final accounting. Further, there was no credible evidence that Samuel Silverstein advanced any sums to the estate.
Other: Testimony was elicited during this trial that the plaintiff Morris Silverstein, after he was removed as administrator received two checks from an insurance company for wind damage to estate property. The checks were made out to the Estate of Esther Silverstein in the total amount of $1281. Silverstein deposited the checks to his own account when they were properly an asset of the estate.
Testimony was also elicited that after he was removed as administrator, he received and kept money for advertising signs located on estate property which, he claims, totaled $1750. This is also money properly belonging to the estate. He also failed to turn over a $175 security deposit from the commercial tenant.
In view of these disclosures, this matter is referred back to CT Page 1166 the Probate Court for the filing of a supplemental or amended final accounting by the administrator.
The Court finds the administrator's fee of $18300 to be reasonable and substantiated, subject to one correction. There is a duplicate billing under date of 4/14/94 for preparation of income tax return of three hours. Accordingly, the administrator's fee is to be reduced by $375 (3 hours x $125) to a total of $17925. (This award of fees is as of July 31, 1994, the date of submission of the final accounting. Additional fees incurred subsequently, if any, are not part of this order).
Klaczak, J.