[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal from probate involves the award of an attorney's fee of $2,595. In spite of the modest (and entirely reasonable) amount of the award in question, the appellant has fought that award with singular ferocity. This ferocity has been accompanied by voluminous paperwork and an extraordinary confusion in the submission of evidence. The Court concludes that the appeal must be dismissed.
The record shows the following pertinent facts. On June 29, 1998, Rose Ann Scala filed a petition for appointment of temporary conservator in the Branford Probate Court. Scala sought the conservator for her sister, Mary Jane Patchell, who was hospitalized in the Branford Hospice. (Because, as will be seen, there are two Patchells involved in this case, Mary Jane Patchell and her surviving husband, Robbie Patchell, the Patchells will be referred to by their first names to avoid confusion.) The asserted ground for the petition was that Mary Jane, a 35-year-old woman with cancer, was refusing appropriate medical CT Page 1565 treatment.
On June 30, 1998, the Probate Court (Donegan, J.) appointed Attorney Cheryl E. Heffernan as to act as Mary Jane's attorney in the conservatorship proceeding. Heffernan accepted the appointment. Acting with admirable efficiency, Heffernan did extensive investigation and filed a six-page report on July 1, 1998. The Probate Court held a hearing on the same day. On July 8, 1998, Donegan, J. filed a memorandum of decision denying the petition.
Mary Jane died on July 16, 1998. On July 22, 1998, Robbie Patchell filed an application for administration of her estate in the North Branford Probate Court. On July 28, 1998, the Probate Court (Forgione, J.) granted the application. On August 4, 1998, a notice to creditors of the estate was published in the New Haven Register.
On September 2, 1998, Heffernan filed a bill for services rendered in the North Branford Probate Court. Her cover letter requests that her bill be accepted "as a claim on the Estate of Mary Jane Patchell" and states that, "[c]onfusion regarding who would be responsible for this bill has resulted in this delay in filing." The letter is accompanied by an itemized invoice showing 17.3 hours of professional services rendered at a rate of $150 per hour for a total balance due of $2,595.
On December 3, 1998, Heffernan wrote to Anthony G. Apicella, the fiduciary's attorney, giving him notice of her claim pursuant to Conn. Gen. Stat. § 45a-360. Apicella received this claim on December 7, 1998.
On January 7, 1999, Heffernan filed an application in the North Branford Probate Court pursuant to Conn. Gen. Stat. §45a-364. This application again sought the attorney's fee in question. The North Branford Probate Court heard the application on February 22, 1999. On April 30, 1999, the Court (Forgione, J.) filed a memorandum of decision granting the application as a claim against the estate.
On May 6, 1999, this appeal from the decision of the North Branford Probate Court was commenced by service of process. The appeal was heard on January 27, 2000. The appeal must be denied.
Robbie has presented 14 reasons of appeal. His first, and most CT Page 1566 vociferously presented, reason is that the Probate Court was precluded by Conn. Gen. Stat. § 45a-649(b)(1) from determining the reasonableness of the requested attorney's fee. That provision, however, is inapplicable to the facts presented by the record here.
Conn. Gen. Stat. § 45a-649(b)(1) provides that, when an attorney is appointed in a conservatorship proceeding, "[i]f the respondent is unable to pay for the services of such attorney, the reasonable compensation for such attorney shall be established by, and paid from funds appropriated to, the Judicial Department." The North Branford Probate Court has made no determination that Mary Jane was unable to pay for the services of an attorney, and this Court is unable to make such a determination on the record here. As is obvious from the procedural posture of this case, she left an estate. Heffernan devoted the hours of professional services in question, which were reasonable, in fulfilling the duty resulting from her appointment by the Branford Probate Court. Since this expenditure was proper, and Mary Jane has died in the interim, Heffernan has a right to be reimbursed from Mary Jane's estate. Elmendorf v.Poprocki, 155 Conn. 115, 120, 230 A.2d 1 (1967). If it turns out that the estate is unable to pay her bill, she will be entitled to seek reimbursement from the Judicial Department (which now prefers to be called the Judicial Branch) pursuant to §45a-649(b)(1).
A second issue presented by the first reason of appeal is whether the application of January 7, 1999 was timely filed. As will be recalled, Heffernan wrote to Apicella, the fiduciary's attorney, on December 3, 1998. Apicella received that claim on December 7, 1998. Robbie claims that the thirty-day period referred to commenced on the date his attorney received the notice in question and that the Probate Court application was consequently made one day too early.
Conn. Gen. Stat. § 45a-360(c) provides that if a fiduciary fails to allow a claim, "the claimant may give notice to the fiduciary to act upon the claim." That subsection further provides that, "If the fiduciary fails to reject, allow or pay the claim within thirty days from the date of such notice, the claim shall be deemed to have been rejected on the expiration of such thirty-day period." (Emphasis added.) Case law makes it clear that the date that the notice was "given" to the fiduciary is the date on which that notice was received. Rapid Motor Lines,CT Page 1567Inc. v. Cox, 134 Conn. 235, 56 A.2d 519 (1947). But what is "the date of such notice"? The legislature, in drafting the statute in question, has distinguished between the claimant's act of "giving" notice to the fiduciary and the date of the notice itself. If the legislature had wished to calculate the commencement of the period in question from, for example, "the date such notice was received," it could easily have done so. It did not.
In addition to textual fidelity, this construction has the advantage of administrative ease. The date on which notice is actually received will not always be known, at least to all parties. The date of the notice, however, will typically — as in this case — appear on the face of the notice itself. If that date is regarded as the commencement date, there can be no question as to when the thirty-day period in question runs. Under this textual and functional analysis, the application here was timely.
In any event, a hypothetical one-day premature filing of the disputed application here would be, in the context of this case, the epitome of harmless error. The fiduciary here can hardly claim that, given one more day to think about it, the claim would have been allowed. In fact, as mentioned, the fiduciary has fought this claim at every step with striking, albeit inexplicable, ferocity. Even if the application were deemed untimely as premature, this prematurity would not be grounds for denial, given the facts of this case.
The first reason of appeal additionally claims that the application should have been denied because the record does not reflect payment of an entry fee. Nonpayment of fees is an internal matter for the Probate Court and hardly a ground for reversing its decision.
The second reason for appeal is that the Probate Court failed to make findings as to other persons to whom Heffernan may have sent her invoice. Heffernan, however, only seeks a single payment. The record shows that she has never been paid for her services. This is not a ground for reversal.
The third reason for appeal alleges, conversely, that the invoice was never submitted to anyone. The record, however, clearly shows, that it was properly submitted to the fiduciary, who refused payment. CT Page 1568
The fourth reason for appeal is that the invoice was not submitted "as against the Estate." It is clear that the invoice was submitted as a claim against the estate.
The fifth reason for appeal is that the invoice is insufficiently documented. The invoice is, in fact, amply documented. The scrivener's errors that it contains are inconsequential.
The sixth reason of appeal is that Robbie did not agree to compensate Heffernan for her services. Such an agreement was unnecessary. Heffernan acted pursuant to an appointment of the court.
The seventh reason of appeal is that Heffernan violated Rule 1.5(b) of the Rules of Professional Conduct by not communicating her fee information in writing. Again, this reason of appeal ignores the fact that Heffernan was acting pursuant to appointment of the court. Under these circumstances, the reasonableness of the fee was a matter to be determined by the court rather than by written agreement with the client.
The eighth reason of appeal is that Heffernan continued to act after being informed that private counsel would represent Mary Jane in the conservatorship proceedings. The evidence makes it clear that Heffernan continued to act pursuant to the appointment of the court and at the direction of the court. In doing so, she acted properly.
The ninth reason of appeal is not altogether clear but appears to be that Heffernan's invoice for her services omitted certain information. The invoice in question contained all the information necessary to enable the Probate Court to act on it responsibly.
The tenth reason of appeal is that the Probate Court considered hearsay. No transcript of the Probate Court proceedings was made, and a trial de novo has been held in this Court. Andrews v.Gorby. 237 Conn. 12, 16, 675 A.2d 449 (1996). This Court made appropriate evidentiary rulings.
The eleventh reason of appeal is that Heffernan's January 7, 1999 application did not include an affidavit she had previously given to Apicella in support of her claim. The affidavit referred CT Page 1569 to only serves to reinforce Heffernan's claim. Its omission could hardly have prejudiced Robbie.
The twelfth reason of appeal is that the Probate Court improperly heard testimony. As mentioned, there is no record of the proceedings below, and this Court has conducted a trial de novo. Robbie's contention that no evidence at all should be heard cannot be sustained. The Court has an obligation to hear evidence in a trial de novo. Both the Probate Court and this Court appropriately heard evidence.
The thirteenth reason of appeal is that the Probate Court failed to make certain findings. As already mentioned, a trial de novo has been held in this Court.
The fourteenth and final reason of appeal is that the Probate Court made certain erroneous findings. Once again, a trial de novo has been held in this Court.
The Court finds that Heffernan's requested fee is reasonable and should legally be paid by the estate.
The appeal is dismissed.
Jon C. Blue Judge of the Superior Court