[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
The defendants, The Salvation Army, and Kenneth J. Carifa, administrator of the estate of John McKinstry, Jr., seek summary judgment dismissing this appeal from a decision by the Probate Court for the District of Berlin. For the reasons stated below, the defendants' motions for summary judgment (#111 and #112) are denied.
 I. BACKGROUND
This matter arises from the plaintiffs' claim of aggrievement as the result of a decision rendered by a commissioner appointed by the Probate Court for the District of Berlin, dated May 23, 2000, and filed in that court on May 24, 2000. (Exhibit C.) The commissioner's decision was accepted and recorded by the Probate Court on May 31, 2000. (Exhibit D.) The following facts are alleged by the plaintiffs in their amended reasons of appeal from decree admitting will to probate, dated October 5, 2000 (#106) ("Amended Reasons of Appeal").
The plaintiffs, David Tooker, Matthew Tooker, and Kimberly Nellenbach, are the nephews and niece of the deceased, John McKinstry, Jr. They presented a claim to the deceased's estate, based on a claimed promise by him to include them in his will. They allege that, during the summer and fall of 1996, the deceased was the administrator of the estate of his mother, and their grandmother, Faith McKinstry. At that time, he retained Attorney Kenneth J. Carifa to represent him as administrator. During the administration of Faith McKinstry's estate, the plaintiffs and their mother, Shirley Tooker, the deceased's sister, who is the daughter of Faith McKinstry, contested the distribution of Faith McKinstry's estate.
The plaintiff's claim that, on or about September 17, 1996, their and Shirley Tooker's attorneys, Paul J. McQuillan and Edward Januszewski, met with Carifa to discuss the settlement of Faith McKinstry's estate. At this meeting, Carifa presented a settlement offer, under which Shirley Tooker would receive $125,000.00, and the plaintiffs would receive the $5,000.00 each which was specified for them in Faith McKinstry's will. The plaintiffs further allege that, as an inducement to themselves and to their mother, Shirley Tooker, to accept the settlement offer, Carifa "added that the children were well taken care of' in John McKinstry, Jr.'s, the deceased's, will. (Amended Reasons of Appeal, ¶ 7.) The plaintiff's claim that, based on Carifa's representation, they and Shirley Tooker agreed to the proposed settlement. CT Page 9855
At the time of the representation by Carifa, the plaintiffs were the main beneficiaries of the deceased's will. On July 31, 1997, after the settlement of Faith McKinstry's estate, the deceased executed a new will, which excluded the plaintiffs as beneficiaries. They allege that they relied on Carifa's representation in agreeing to the settlement of their grandmother's estate and that it constituted an oral contract by the deceased to include them in his will.
On June 5, 2001, the defendant The Salvation Army, which was named as the sole beneficiary in the deceased's 1997 will (Exhibit A), filed a motion for summary judgment, accompanied by a copy of the transcript of the hearing before the commissioner (Exhibit B), various other exhibits, and a memorandum of law. Defendant Carifa, as administrator, filed his motion on June 7, 2001, in which he joined with and adopted the arguments and evidence submitted by his co-defendant in its motion for summary judgment. The plaintiffs timely filed a memorandum of law in opposition to the motion.
The court heard argument at short calendar on July 2, 2001, and, after reviewing the relevant pleadings, memoranda and exhibits, now issues this opinion.
 II. STANDARD OF REVIEW
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Miles v.Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). In considering the motion, the court does not resolve an issue of material fact. Rather, it determines whether or not such an issue is present. See MountaindaleCondominium Assn. v. Zappone, 59 Conn. App. 311, 330, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).
"The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, 252 Conn. 193, 201,746 A.2d 730 (2000). "Summary judgment "is appropriate only if a fair and CT Page 9856 reasonable person could conclude only one way. . . . The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." Morascini v.Commissioner of Public Safety, 236 Conn. 781, 808-09, 236 A.2d 1340
(1996).
 III. DISCUSSION A. Breach of Oral Agreement
The defendants argue that summary judgment is appropriate because the evidence does not show that the deceased made any promise or agreement not to change his will. The plaintiffs respond by contending that the evidence creates a genuine issue of material fact on that issue.
To support the argument that the deceased's offer to settle the dispute concerning Faith McKinstry's estate did not include a promise to keep her grandchildren in his will, the defendants rely on testimony elicited in the hearing before the commissioner. As plaintiffs correctly contend, they are not limited to the evidence presented there, since there was no agreement between the parties that the hearing record would be utilized on appeal. "[General Statutes] § 45a-186 provides that if a record, including a transcript, of the testimony was made before the Probate Court pursuant to §§ 51-72 and 51-73, the Superior Court shall review the decree of the Probate Court using an abuse of discretion standard."Andrews v. Gorby, 237 Conn. 12, 15, 675 A.2d 449, 675 A.2d 449 (1996). General Statutes § 51-72 provides that the parties to the probate proceeding must agree in writing to the creation of such a record. Here, at the commencement of the hearing, the estate's attorney stated, in response to the commissioner's inquiry, that the parties did not agree that the record of the hearing was to be used on an appeal. (Exhibit B, transcript of the hearing held on March 23, 2000, p. 4.) (Hereafter, references to this transcript will be abbreviated as "Tr. at p. ___.") Accordingly, this matter is to be considered de novo. Andrews v. Gorby,
supra.
Contrary to the defendant The Salvation Army's contention in its memorandum, p. 12 ("deft. memo."), that "[t]he proof is clear, uniform and unrebutted," the evidence presents material issues of fact. For example, according to McQuillan, in the course of their September, 1996, CT Page 9857 settlement meeting concerning the dispute between Shirley Tooker and her brother, the deceased, over their mother's estate, Carifa stated that "Mrs. Tooker should know that her children are well taken care of," referring to the deceased's will. Tr. at p. 18. The defendant argues, in its memorandum at p. 12, that McQuillan characterized Carifa's statement as "gratuitous." (Tr. at p. 28). The transcript reflects ambiguity as to this point. It is unclear whether or not McQuillan meant to characterize the statement by Carifa as "gratuitous," since in response to a question he stated, "I believe it was a gratuitous statement that was made to him when we were discussing my trying to convince my client to settle the case." (Tr. at p. 28, emphasis added.)
According to McQuillan, he conveyed the deceased's settlement offer to Shirley Tooker, along with the alleged representation concerning the deceased's will. See Tr. at pp. 25-26. In her testimony, Shirley Tooker stated that, based at least in part on that representation, she agreed to the settlement offer. See Tr. at pp. 4849. According to McQuillan, he then conveyed to Carifa that his client was willing to accept the representation. See Tr. at p. 31. McQuillan agreed that he did not make it a condition of the final settlement of Faith McKinstry's estate. See Tr. at pp. 32, 34. However, he stated that there were two inducements for Shirley Tooker to agree to the settlement: (1) $125,000, and (2) that her children were "taken care of' in the deceased's will. Tr. at p. 34. While he agreed that neither the subsequent Mutual Distribution agreement (Claimant's Exh. 1), nor Carifa's letter of September 27, 1996 (Claimant's Exh. 4) outlining the settlement contained a statement to the effect that the deceased agreed not to write a new will, McQuillan contends that he had a separate oral agreement to do that. See Tr. at pp. 38, 40.
Carifa's testimony starkly contrasts with that of McQuillan. Carifa stated that he made no statement concerning the deceased's will during the September, 1996 settlement meeting. See Tr. at pp. 67, 72. Instead, he testified that in late November or early December, 1996, when McQuillan and he were discussing, by telephone, the execution of the Mutual Distribution agreement, McQuillan asked him to confirm McQuillan's understanding that Matthew Tooker was the major beneficiary of Mr. McKinstry's current will. Carifa testified that he stated, "Yes, I believe that's correct. Who knows how long that will last." (Tr. at p. 68)
In view of this disputed issue, the court does not agree with the defendant's contention, in its memorandum at p. 13, that "[t]here was no evidence of a promise to not change his will." This contradictory testimony by witnesses presents the essence of a material issue of fact which cannot be resolved by summary adjudication. CT Page 9858
In addition, the defendants argue that the alleged promise is too vague and ambiguous to be enforced. See deft, memo., p. 11, n. 1. In particular, the memorandum cites Sanford v. Williamson, 23 Conn. Sup. 61,62, 176 A.2d 597 (1962) for the proposition that the phrase "take care of' is too vague to be enforced. There, a husband and wife rendered services to the decedent during a period of years preceding his death while they lived in his home, and alleged that they were induced to do so by his promise to compensate them for the same in his will or by a specific bequest of the residence. See id.
The court stated, "[t]he evidence, although indicating some conversations between decedent and others, including claimants, on the general subject of "taking care' of claimants in return for their care of him and his home, was far from sufficient to establish a specific enforceable agreement to back a claim for the property itself." Id. In contrast, here the alleged representation was that the plaintiffs already were "well taken care of' in the deceased's then-existing will. There was no vagueness or ambiguity in that statement of fact. If it was made, it was made by the deceased's attorney, a person with knowledge, who had the apparent authority to speak on behalf of the deceased. The representation did not depend on doing something uncertain in the future. The key element was that that which was specifically in place for the plaintiffs, whatever it was, would not be changed. There are material issues of fact in dispute as to whether there was such a representation and, if so, whether it formed the basis for an enforceable agreement.
 B. Parol Evidence Rule
The defendants claim also that the oral contract asserted by the plaintiffs would violate the parol evidence rule, since the settlement agreement did not include the alleged promise. See deft. memo, pp. 14-16. Concerning the parol evidence rule, our Supreme Court has stated, "[w]e long have held that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." (Internal quotation marks omitted.) TallmadgeBros., Inc. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479,502, 746 A.2d 1277 (2000).
"The parol evidence rule does not of itself, therefore, forbid the CT Page 9859 presentation of `parol evidence,' that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud." (Internal quotation marks omitted.) TIE Communications, Inc. v.Kopp, 218 Conn. 281, 288-289, 589 A.2d 329 (1991).
In support of their argument, the defendants refer the court to Carifa's letter of September 27, 1996, which summarized the settlement agreement (Claimant's Exh. 4) and to the Mutual Distribution agreement (Claimant's Exh. 1). The defendants argue that any evidence that the parties had a side agreement about taking care of the plaintiffs would violate the parol evidence rule since, "[i]n this case the parties agreed that the settlement set forth in Claimant's Exhibit 4 was the `complete agreement.'" (deft. memo., pp. 15-16.)
In his testimony, McQuillan agreed that Carifa's September, 1996 letter set forth the parties' complete agreement. See Tr. at p. 38. That letter has the heading "Re: Estate of Faith McKinstry." (See Claimant's Exh. 4) The first sentence reads, "[t]his letter is to confirm our understanding regarding the settlement of all claims regarding the Estate of Faith McKinstry and John McKinstry, Jr." The next sentence states that, "Mr. McKinstry will fund into the estate an amount of money sufficient to pay a settlement from the estate to Shirley Tooker in the sum of $125,000.00." The third paragraph states, "I will prepare a Mutual Distribution Agreement to outline this agreement. In return we will require a General Release signed by Shirley Tooker for all claims against the Estate of Faith McKinstry and against John McKinstry, Jr." Notably, it does not state that such a release of claims against John McKinstry, Jr. would be required from the plaintiffs, who were to receive bequests under Faith McKinstry's will and who eventually signed the contemplated Mutual Distribution agreement. The letter also contains the sentence, "[t]his represents the complete agreement between the parties."
The record does not reflect that the release from Shirley Tooker was ever provided. To the contrary, the record contains other letters concerning the transaction which indicate, by omission, that it was not provided, and that, notwithstanding the lack of its provision, the monies CT Page 9860 called for by the settlement were paid. Respondents' Exhibit 2, a letter from Carifa to McQuillan, dated November 13, 1996, again entitled "Re: Estate of Faith McKinstry," enclosed a draft of the Mutual Distribution agreement, in order to "formalize the settlement of all claims between the parties as outlined in my September 27, 1996 letter." The release is not mentioned. Respondents' Exhibit 1, a letter from Carifa to McQuillan, dated December 19, 1996, again entitled the same, enclosed a signed original Mutual Distribution agreement and stated that as soon as Carifa received the checks from Mr. McKinstry, they would be forwarded to McQuillan's office. Again, the release was not mentioned. Finally, Claimant's Exhibit 6, another letter from Carifa to McQuillan, dated December 31, 1996, similarly entitled, enclosed the checks. The letter noted that "[t]hese payments complete the settlement of all claims arising from the Estate of Faith McKinstry." Once again, the release was not discussed.
The Mutual Distribution Agreement itself, Claimant's Exhibit 1, was addressed to the Probate Court and again referred to the Estate of Faith McKinstry. It provided that the parties, including the plaintiffs, agreed to divide that estate according to the terms set forth therein. They agreed also that each of them had no other claim to that part of the estate which was assigned to another party and were forever barred therefrom. Claims against Mr. McKinstry unrelated to his mother's estate were not discussed, let alone released.
What emerges from the Mutual Distribution agreement and the correspondence relating to it is "uncertainty as to the object or extent of [the] engagement," Tallmadge Bros., Inc. v. Iroquois Gas TransmissionSystem, L.P., supra, as well as uncertainty concerning the settlement agreement's terms. Does the reference in the September, 1996 letter to "Re: Estate of Faith McKinstry," coupled with the first sentence reading "regarding the settlement of all claims regarding the Estate of Faith McKinstry and John McKinstry, Jr.," mean that the parties agreed to settle all claims against Mr. McKinstry or only those relating to his mother's estate? At the time, the only claims related to his mother's estate. Does the omission of any reference to releases from the plaintiffs mean that any representation concerning them and any claims by them related to Mr. McKinstry's estate were not covered by the "complete agreement"? The Mutual Distribution agreement does not refer to all claims against Mr. McKinstry; rather, it concerns only his mother's estate. What is the significance, if any, of the facts showing that the release from Shirley Tooker apparently was not even drafted, let alone provided? The testimony at the hearing does not make this clear.
As noted, extrinsic evidence is permitted under the parol evidence rule to explain an ambiguity appearing in an instrument or to prove a CT Page 9861 collateral oral agreement which does not vary the terms of the writing. In view of the factual issues discussed above, each of these exceptions appears to be applicable in this situation.
In a footnote, the defendants also assert that the plaintiffs' claim violates the statute of frauds, General Statutes § 52-550, since the plaintiffs allege a testamentary contract disposing of an entire estate, including real property. See deft, memo., p. 14, n. 2. Our Supreme Court has "held that acts of part performance, if adequate under the circumstances, can take an oral contract to devise real property out of the statute." Ubysz v. DiPietro, 185 Conn. 47, 55, 440 A.2d 830 (1981). Here, the trier of fact may determine that the settlement by the plaintiffs of the dispute concerning the estate of Faith McKinstry constituted sufficient acts of part performance to take the alleged oral promise out of the statute.
 IV. CONCLUSION
Viewing the evidence in the light most favorable to the nonmoving parties as it must, the court finds that the defendants have not met their burdens on their motions for summary judgment. As set forth above, the movants have not shown that it is quite clear what the truth is and have not excluded any real doubt as to the existence of any genuine issue of material fact.
Accordingly, the defendants' motions for summary judgment are hereby denied. It is so ordered.
BY THE COURT,
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT