### IN RE GORDON C. ANDREWS' APPEAL FROM PROBATE
### (AC 23446)

Foti, DiPentima and Peters, Js.

Argued May 29—officially released July 29, 2003

*William A. Phillips,* for the appellant (plaintiff).

*William J. Wenzel,* for the appellee (defendant John Thomas Gorby).

*Opinion*

PETERS, J. General Statutes § 45a-242 (a) permits a Probate Court to remove a fiduciary of an intervivos or testamentary trust if the fiduciary "becomes incapable of executing such fiduciary's trust . . . ." The issue presented by this case is whether a protracted conflict of interest between a trustee and the beneficiaries of the trusts justifies removal of the trustee under this statute. A Probate Court so held, and the trial court came to the same conclusion. The trustee has appealed from the judgments of the trial court rendered in favor of the trust beneficiaries. We affirm the judgments.

The plaintiff, Gordon C. Andrews, appealed to the trial court from a decree of the Probate Court for the district of Fairfield. The plaintiff alleged that the Probate Court had abused its discretion by removing him as the trustee of the John Stark Gorby Trust. The defen-

dant, John Thomas Gorby, is the testator's only son and the primary beneficiary of the estate.

The trial court heard the plaintiff's appeal as a Probate Court. As such, its jurisdiction was the jurisdiction of a Probate Court and not the jurisdiction of the Superior Court. *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991). In the absence of a record of the underlying Probate Court proceedings, the court heard the plaintiff's appeal de novo. See *Andrews* v. *Gorby*, 237 Conn. 12, 16, 675 A.2d 449 (1996).

The court's careful and detailed memorandum of decision describes the relevant facts.[1] The decedent, John Stark Gorby, was a resident of Greenwich and was survived by one son, the defendant herein, and six grandchildren, all the offspring of the defendant. The plaintiff prepared a will for the decedent that was executed on February 3, 1987. In subsequent documents drafted by the plaintiff and executed by the decedent, the plaintiff was named as executor of the will and as trustee of two trusts, one intervivos and one created by the will.

After John Stark Gorby's death in 1989, the plaintiff was duly appointed as executor. There ensued lengthy litigation about the propriety of the fees that the plaintiff charged the estate. That litigation resulted in a finding by the trial court in a companion case that the estate had been overcharged by $48,898.[2]

The trial court found that there was a clear conflict of interest between the plaintiff and the defendant John Thomas Gorby.[3] In its memorandum of decision, the

---

[1] Because the plaintiff has not filed a transcript of the proceedings before the trial court, the court's factual findings stand unchallenged.

[2] The companion case is *In re Andrews' Appeal From Probate*, 78 Conn. App. 441, 826 A.2d 1267 (2003) (AC 23447). It upholds the judgment of the trial court.

[3] The plaintiff named John Thomas Gorby and his six children as defendants. We refer in this opinion to John Thomas Gorby as the defendant.

court stated: "At the trial of these matters, the only two witnesses were the plaintiff and the defendant John Thomas Gorby, old warriors who have been battling for ten years. Although a transcript of their testimony would not necessarily disclose it, the atmosphere in the courtroom was so thick that you could cut it with a knife. In the plaintiff's own words, he described his relationship with the defendant as 'strained' since the fee controversy developed in 1992. Ten years of continuous litigation has done little to thaw the icy relationship between them. It is absolutely clear that the defendant primary beneficiary does not want the plaintiff restored. Since 1998, when the substitute trustee, Union Trust Company, was appointed in both trusts, there has been perfect harmony between trustee and beneficiaries.

"Obviously, the protracted litigation between the parties is the main reason proffered by the defendant to support the plaintiff's removal. . . . Up until 1992, the relationship between the parties appeared to be reasonably cordial. That changed drastically when the dispute over fees began. The court accepts the fact that the plaintiff's only commitment to the defendant concerning an executor's fee was that it would be reasonable. . . . He initially set an executor's fee of $28,064, based on a percentage charge on the estate's assets, less those included for tax purposes only. He did that of his own volition because he believed it would be inequitable to the estate to pay him a fee on those assets which would go to the trust from which he would be paid another fee.

"[Upon receiving professional advice of his entitlement to attorney's fees, the plaintiff] asked for an attorney's fee of $28,064, for total fees of $56,128. Certainly at this time, at least as to the attorney's fee, the plaintiff was sowing the seeds of a conflict of interest with the estate. He apparently had no time records as to what he specifically did as an attorney to the exclusion of what he did as the executor, but he charged exactly

the same fee for both. No one presented any evidence as to whether Connecticut did in fact have such a practice or policy regarding charging dollar for dollar executor's and attorney's fees.

"The beneficiaries felt the fees were too high, and the defendant at his own expense acquired the services of [a] law firm . . . which moved to disallow the fees. What the plaintiff did next was to increase the request for his executor's fee to $45,898 in accordance with the Union Trust fee schedule even though he had originally described that schedule as 'inequitable' to the estate. His personal dealing and conflict with his duty of complete loyalty to the estate had already commenced. His claim now for executor's and attorney's fees totaled $73,962.

"After the hearing in the Probate Court, Judge Shannon allowed the plaintiff an executor's fee of $28,000 and nothing for an attorney's fee. It is of interest that the defendant did not appeal from that award even though he believed it to be too high. On the other hand, the plaintiff did, as to both the executor's fee and the attorney's fee. . . . [As a result of that appeal, the plaintiff was awarded fees] in the amount of $25,000, $3000 less than Judge Shannon originally had authorized and $58,898 less than the plaintiff sought. . . .

"Things were bad enough then between the parties, but they were about to get worse. The defendant had by his own initiative and cost saved the estate $58,898. Had things stopped there, we might not be here now, but they did not.

"[The plaintiff's attorney] had charged the plaintiff $25,000 for services and $3423.81 for disbursements for representing his interest against the estate beneficiary over the plaintiff's personal fees. The plaintiff paid for all these services and disbursements right out of the estate's income. He then sought approval in the Probate

Court for an allowance of those fees and disbursements, and they were not allowed. He was essentially asking for the estate to pay for his services in a failed attempt to overcharge the estate. The Probate Court disallowed it, and the plaintiff again took another appeal, which is pending before this court. This forced the defendant beneficiary to again hire counsel for the purpose of preserving estate assets, the very thing the plaintiff was required to do based on his fiduciary relationship. All of the plaintiff's efforts to this date, all of which would result in the diminishment of estate assets, had been unsuccessful.

"These essentially were the facts available to the Probate Court when it removed the plaintiff as trustees of both trusts. There was no way of knowing then the outcome of the appeal, but the consequences of a similar result in the Superior Court would certainly present the plaintiff with potential future conflicts of interest with the estate initially and now the trusts."

In light of these factual findings, the court concluded that acrimony between the parties had irreparably tainted the plaintiff's ability to continue to represent the interests of the trust beneficiaries in a fair manner. The court held, therefore, pursuant to § 45a-242, that the conflicts of interest between the parties justified removal of the plaintiff as trustee and executor for both trusts.

The plaintiff appeals from the judgments of the court on two grounds. Without challenging the court's factual findings, he argues that his removal was improper as a matter of law because it was not authorized by § 45a-242 and because it was improperly based in part on events subsequent to the probate decrees from which the appeals were taken. "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must deter-

mine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision." (Internal quotation marks omitted.) *Roach* v. *Ivari International Centers, Inc.*, 77 Conn. App. 93, 99, 822 A.2d 316 (2003).

## I

The plaintiff's principal argument is that, under § 45a-242 (a), he can be removed as executor only if he has become "incapable of executing his trust" and that the protracted litigation between the parties does not prove such incapacity. He maintains that (1) litigation about the administration of the estate is not a valid basis for removing him from the administration of the trusts, (2) disagreements about the administration of the estate are not sufficient evidence of a clear and continuing conflict of interests to establish his incapacity to act and (3) the court's factual findings, even if they demonstrate his disloyalty to the estate, do not establish his disloyalty to the trusts. At oral argument, he emphasized the importance of judicial deference to the decedent's choice of executor and trustee. We are not persuaded by any of the plaintiff's claims.

In his first and third claims, the plaintiff argues that we should draw a sharp line of distinction between his role as executor of the John Stark Gorby estate and his role as trustee of the testamentary trust and the intervivos trust.[4] These claims are unsustainable in light of the facts in this case. The plaintiff drafted the will and the codicils that established the testamentary trust, and at the same time drafted the intervivos trust. In each instrument, he designated himself as fiduciary and established his right to receive fiduciary fees. The docu-

[4] The plaintiff represents that all of his accounts with respect to the trusts have been approved. He has not, however, pointed out a place in the record that establishes the accuracy of this representation.

ments creating the will and the trusts were part of one transaction.

In his second claim, the plaintiff argues that the trial court, sitting as a Probate Court, improperly removed him as trustee because there was insufficient evidence to establish that he had become "incapable of executing his trust." The plaintiff and the defendant both cite *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 66–67, 519 A.2d 1185 (1987), in which our Supreme Court stated: "The existence of a potential conflict of interest does not, of itself, mandate removal of [a fiduciary]. . . . Thus, in order to justify removing [a fiduciary], there must be evidence of a clear and continuing conflict of interest rendering the [fiduciary] unfit to perform [his] duties to the estate. The bare possibility of a cause of action on the estate's behalf against the [fiduciary], if such a claim were frivolous or speculative, would not warrant removal. Whether the [fiduciary] has a conflict of interest that renders [him] unfit to continue in the service of the estate depends, in significant part, upon whether the estate's potential claims against the [fiduciary] have sufficient substance to warrant consideration by a successor fiduciary uninfluenced by a motive to avoid litigation." (Citations omitted.) See also *Satti* v. *Kozek*, 58 Conn. App. 768, 776, 755 A.2d 333, cert. denied, 254 Conn. 928, 761 A.2d 755 (2000).

The crux of the plaintiff's argument is that, because he was entitled to recover fiduciary fees, a disagreement about the amount of these fees does not demonstrate a cognizable conflict of interests and, therefore, does not justify the conclusion that he had become "incapable of executing his trust." The fact that it was the plaintiff himself who instigated and prolonged the fee litigation justified the court's finding that the plaintiff bore responsibility for the conflict of interests that arose out of the fee litigation.

Alternatively, the plaintiff argues that, however acrimonious the fee litigation has been in the past, he should not be removed as trustee because it is unlikely that there will be another such conflict of interest in the future. The trial court, however, expressly found to the contrary. The court noted that, if it is determined that the plaintiff overcharged the estate with respect to his fees, he would now have to make repayment to himself as trustee of the testamentary trust that has taken over the property of the estate. "How tenacious can he be against himself in collecting those funds, and, if he does, how bitter will he be against the beneficiaries in both trusts, who have caused the result? There is also the future potential conflict of interest over attorney's fees and disbursements of [the plaintiff's attorney] in representing the plaintiff in these two appeals as well as [another pending] case . . . . To the extent that the plaintiff pursues the trusts again for those expenses, the litigation may never end."

The force of the court's finding is not diminished by the plaintiff's suggestion that, if he were again to fail in his duty as trustee, he could be held in contempt. This suggestion flies in the face of the special duty of loyalty that a fiduciary owes to the beneficiary of a trust. As Chief Judge Benjamin N. Cardozo observed in *Meinhard* v. *Salmon*, 249 N.Y. 458, 464, 164 N.E. 545 (1928), "[a] trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." See also *Hall* v. *Schoenwetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996); *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 220, 635 A.2d 798 (1994); *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 65.

We conclude, therefore, that on the record before it, the court properly ordered the removal of the plaintiff as trustee for the testamentary and intervivos trusts

created by John Stark Gorby. We are mindful of the plaintiff's admonition that we should hesitate to set aside the testator's expressed designation of the plaintiff as executor and trustee. Under the circumstances of this case, however, the testator's preference cannot prevail. The court fully documented the conflict of interest that has rendered the plaintiff "incapable of executing his trust."

## II

The plaintiff's second argument for reversal of the judgments removing him from his position as trustee of each trust is the claim that the court improperly considered evidence that could not have been presented to the Probate Court. Such evidence is inadmissible because a judge of the Superior Court, when sitting as a judge of the Probate Court, is not sitting as a court in equity. Accordingly, the court in this case did not have unlimited authority to consider whatever evidence might be relevant to a fair disposition of the case. See *Gardner* v. *Balboni*, supra, 218 Conn. 225; *Satti* v. *Rago*, 186 Conn. 360, 369, 441 A.2d 615 (1982); *Thomas* v. *Arafeh*, 174 Conn. 464, 470, 391 A.2d 133 (1978). Indeed, the court acknowledged the existence of this evidentiary rule.

The plaintiff cites one instance in which the court overstepped its bounds. In that instance, the court found that there had been perfect harmony between a successor trustee and the defendant. Obviously, the conduct of a successor trustee postdated the plaintiff's removal from the trusteeship.

The plaintiff argues that the court's improper reference to a successor trustee made its decision "defective" so that its determination "should not be allowed to stand." The question raised by this argument is whether improper admission of evidence implicates the Superior

Court's subject matter jurisdiction. If it does, the trial court's judgments cannot be sustained.

The plaintiff's jurisdictional argument finds a modicum of support in *Gardner* v. *Balboni*, supra, 218 Conn. 225. In that case, the Supreme Court described an appeal from probate as "a trial de novo with the Superior Court sitting as a Probate Court and restricted by a Probate Court's *jurisdictional limitations.* . . . Although the Superior Court may not consider events transpiring after the Probate Court hearing; *Satti* v. *Rago*, [supra, 186 Conn. 369]; it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered." (Citations omitted; emphasis added.) *Gardner* v. *Balboni*, supra, 225.

In *Satti* v. *Rago*, supra, 186 Conn. 369, however, the Supreme Court had described the admission of evidence of events subsequent to the Probate Court hearings in a less draconian fashion. In that decision, the court held that "[t]he error of admitting evidence of [a party's] current interest being irrelevant to the issue of past opportunity lost is, therefore, harmless." Id. The *Satti* court treated the improper admission of such evidence as evidentiary error, not as jurisdictional error.

Did *Gardner* implicitly overrule *Satti*? We conclude that it did not. *Gardner* cited *Satti* with approval. Our research has disclosed no subsequent appellate case that has cast a shadow over the holding of *Satti*.

On the merits of the jurisdictional argument, the plaintiff has not cited, and we have not found, any authority holding that the improper admission of evidence by a Superior Court sitting as a Probate Court implicates the court's subject matter jurisdiction. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases

of the general class to which the proceedings in question belong." (Citations omitted; internal quotation marks omitted.) *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 423–24, 559 A.2d 1103 (1989); see also *Savoy Laundry, Inc.* v. *Stratford*, 32 Conn. App. 636, 639, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993). Unquestionably, the court had jurisdiction to consider the propriety of removing the plaintiff from his position as trustee.

The only question that remains to be considered is whether the trial court's evidentiary error, even if not jurisdictional, was harmful to the plaintiff. We agree with the defendant that it was not. The court described in detail the facts relating to the plaintiff's conduct that were the basis for its decision that removal of the plaintiff from his trusteeship was justified. Indeed, the plaintiff has not argued that the court's reference to a successor trustee was harmful to his position.

### III

We conclude, therefore, that the trial court properly removed the plaintiff from his position as trustee of the trusts created by John Stark Gorby. The court's uncontested findings of fact support its determination that the plaintiff's conduct gave rise to a conflict of interest that was sufficiently serious to warrant his removal. These findings have persuasive value despite the court's improper but harmless consideration of evidence that was irrelevant to the plaintiff's trusteeship.

The judgments are affirmed.

In this opinion the other judges concurred.