## TAMARA A. SHOCKLEY *v.* EDWARD C. OKEKE

Superior Court, Judicial District of Stamford-Norwalk
File No. FA-02 0188208S

Memorandum filed July 14, 2004

*Tamara A. Shockley*, pro se, the plaintiff.

*Edward C. Okeke*, pro se, the defendant.

TIERNEY, J. This is an appeal from the decision of the Probate Court for the district of Stamford denying the application by the plaintiff, Tamara A. Shockley, to change her son's name. Both parties appeared pro se in both courts. The pleadings in this appeal were closed. The case was assigned for a May 14, 2004 trial. After due notice to the defendant, Edward C. Okeke, he failed to appear at trial. The plaintiff appeared and presented evidence. The trial proceeded and the evidence concluded on May 14, 2004. The parties had previously submitted legal memoranda. No posttrial memoranda were submitted. In this appeal, the plaintiff seeks two forms of relief: (1) change the minor child's name to Cameron Nnamdi Shockley-Okeke; and (2) change the

minor child's birth certificate to reflect his name at birth as Cameron Nnamdi Shockley-Okeke.

## FACTS

The court makes the following findings. The plaintiff is a resident of Stamford, and the defendant is a resident of Paris, France. On May 25, 2000, a male child was born, issue of the relationship of the parties. The parties were not married at the time of the birth of the child and have never been married to each other. The parties executed an acknowledgment of paternity pursuant to General Statutes § 46b-172. This paternity acknowledgment is dated May 26, 2000, a copy of which is in this file. The name of the minor child on the paternity acknowledgment is: "Nnamdi Ikwunne Okeke."

The plaintiff commenced a lawsuit against the defendant seeking orders of custody and visitation of the minor child: *Shockley* v. *Okeke,* Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-01 0184612S. This custody-visitation case was returnable on June 28, 2001. Judgment entered in that custody-visitation case on August 18, 2003 (*Shay, J.*). The acknowledgment of paternity referred to previously was filed in that custody-visitation case on January 24, 2002, as pleading number 104.55. The trial court then found that the parties were the parents of the minor child born on May 25, 2000.

The defendant, whose full name is Edward Chukwuemeke Okeke, was born and raised in Nigeria. The plaintiff, Tamara A. Shockley, was born and raised in the United States. The aforementioned acknowledgment of paternity dated May 26, 2000, referred to the male child born on May 25, 2000, as Nnamdi Ikwunne Okeke. Both parties signed the paternity acknowledgment containing the child's name as stated. Although it is a custom in Nigeria to have a formal naming ceremony, such a ceremony did not take place. The minor child was

not baptized. There have been no previous change of name applications in any jurisdiction anywhere concerning the minor child.

On May 15, 2001, the plaintiff, then described as Tamara Ann Shockley, filed a petition with the Probate Court for the district of Stamford "to change her son's name from Nnamdi Ikwanne Shockley-Okeke to Cameron Nnamdi Shockley-Okeke." Despite the fact that her son's middle name is spelled Ikwunne in the paternity acknowledgment, the plaintiff spelled her son's middle name as Ikwanne in the Probate Court and Superior Court proceedings. On occasion, the plaintiff has spelled her son's middle name as Ikwane. On June 15, 2001, the Probate Court held a hearing and considered the testimony of both parties who were present. The Probate Court for the district of Stamford issued a decree dated November 14, 2001, and entered the following order: "Wherefore, it is ordered and decreed that the application by Tamara Ann Shockley to change the name of her son, Nnambi Ikwanne Shockley-Okeke, is hereby denied." (Note the different spelling of the first name.)

On December 11, 2001, the plaintiff filed a motion for appeal from probate and attached a copy of the November 14, 2001 probate decree signed by Judge Gerald M. Fox, Jr., of the Probate Court for the district of Stamford. The defendant was served pursuant to an order of notice. He filed a pro se appearance on May 31, 2002. The plaintiff later filed reasons of appeal. The defendant filed a lengthy answer dated May 31, 2002, designated as pleading number 105.00. The answer was five pages in length and attached seven additional pages of documents. The defendant claimed no affirmative relief. The pleadings were closed on May 31, 2002. Thereafter, on June 28, 2002, the defendant filed a motion to dismiss the plaintiff's complaint for failure to state a cause of action. This motion to dismiss was

denied after a hearing. The defendant thereafter filed a one page answer dated July 1, 2002. On July 29, 2002, the defendant filed another motion to dismiss, which was denied by the court on September 3, 2002. The issues having been joined, the matter was tried to the court.

## STATEMENT OF LAW

General Statutes § 46b-1 defines family relations matters: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (6) complaints for change of name . . . (14) appeals from probate concerning: (a) Adoption or termination of parental rights; (b) appointment and removal of guardians; (c) custody of a minor child; (d) appointment and removal of conservators; (e) orders for custody of any child; (f) orders of commitment of persons to public and private institutions and to other appropriate facilities as provided by statute . . . ." It would appear on the face of this definition statute that the Superior Court does not have jurisdiction to entertain an appeal from probate from the denial of a petition for change of name for a minor child. By this statute, the Superior Court does have jurisdiction to entertain virtually every other issue affecting the minor child. The Superior Court does have jurisdiction to change a child's name in a direct action brought in the Superior Court. This issue has not been raised by either party. This court believes that § 46b-1 contains a technical oversight and the Superior Court does have jurisdiction to hear an appeal from a Probate Court change of name proceeding.

The authority for a court of probate to change a name is General Statutes § 45a-99 as amended by Public Acts 2003, No. 03-202, § 18 (P.A. 03-202), effective October 1, 2003, which provides: "The courts of probate shall have concurrent jurisdiction with the Superior Court, as provided in [General Statutes §] 52-11, as amended

by this act, to grant a change of name, except a change of name granted in accordance with subsection (a) of [General Statutes §] 46b-63." P.A. 03-202. Section 46b-63 does not apply to the present case because the parties were never married. Section 18 of P.A. 03-202, the latest technical amendment, did not change the essential wording of § 45a-99. The general civil session of the Superior Court also has jurisdiction to change names. Section 52-11 provides: "The superior court in each judicial district shall have jurisdiction of complaints praying for a change of name, brought by any person residing in the judicial district, and may change the name of the complainant, who shall thereafter be known by the name prescribed by said court in its decree." Section 17 of P.A. 03-202, the latest technical amendment, did not change the essential wording of § 52-11.

There are three different proceedings that can be brought for a change of name in Connecticut. The first is a petition to the Superior Court civil docket under § 52-11 for a change of name. This procedure was not used by the plaintiff. The second is by filing a complaint for a change of name as a family relations matter before the family docket of the Superior Court under § 46b-1 (6). The plaintiff did not use this procedure. The third is an application for a change of name to the Probate Court for the district where the minor child and the plaintiff reside under § 45a-99. Thereafter, the plaintiff may appeal from the Probate Court decision to the Superior Court under § 46b-1. This is the procedure that the plaintiff used. The Probate Court has concurrent jurisdiction with the Superior Court to grant such a change of name under § 45a-99.

When the Superior Court hears an appeal from a decision of the Probate Court, it acts as the Probate Court. "As such, its jurisdiction was the jurisdiction of a Probate Court and not the jurisdiction of the Superior

Court." *In re Andrews' Appeal from Probate,* 78 Conn. App. 429, 431, 826 A.2d 1260 (2003); *Gardner* v. *Balboni,* 218 Conn. 220, 225, 588 A.2d 634 (1991). "When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate." *Kerin* v. *Stangle,* 209 Conn. 260, 264, 550 A.2d 1069 (1988); *Satti* v. *Rago,* 186 Conn. 360, 365, 441 A.2d 615 (1982). In the absence of a record of the underlying Probate Court proceedings, the court hears the plaintiff's appeal de novo. *Andrews* v. *Gorby,* 237 Conn. 12, 16, 675 A.2d 449 (1996); *In re Andrews' Appeal from Probate,* supra, 431. "In an appeal from probate, the Superior Court retries the issues de novo, and the case is not presented on a transcript of the proceedings in the Probate Court." *Miller* v. *Miller,* 158 Conn. 217, 224, 258 A.2d 89 (1969). "Although the Superior Court may not consider events transpiring after the Probate Court hearing . . . it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered." (Citation omitted.) *Gardner* v. *Balboni,* supra, 225; *Baskin's Appeal from Probate,* 194 Conn. 635, 641, 484 A.2d 934 (1984); *Stevens' Appeal,* 157 Conn. 576, 581, 255 A.2d 632 (1969). The plaintiff admitted that there was no court reporter or monitor present at the Probate Court hearing. There was no transcript or other record of the Probate Court hearing other than the documents submitted and Judge Fox's decision.

This court considered the present matter de novo. General Statutes §§ 45a-186, 51-72, 51-73; *Andrews* v. *Gorby,* supra, 237 Conn. 16; *Geisel* v. *Durkin,* Superior Court, judicial district of Hartford, Docket No. CV-02 0818949S (May 18, 2004) (37 Conn. L. Rptr. 89) (*Beach, J.*). The only testimony offered was that of the appearing plaintiff, the defendant having defaulted his appearance after due notice for trial. This court could

not consider the testimony in the Probate Court because there was no record of that testimony.

None of the three aforementioned statutes, §§ 52-11, 46b-1 (6) and 45a-99, contain criteria for changing a name. In his decision, Judge Fox cited *Don* v. *Don*, 142 Conn. 309, 311–12, 114 A.2d 203 (1955), which states that a change of name application rests in the sound discretion of the court. The court must take into consideration whether the change of name will promote the child's best welfare. Id., 312. *Don* involved § 52-11. "In determining whether the application for change of name should be granted, the court is bound to consider the best interests of the minor child." *Peterson* v. *Peterson*, Superior Court, judicial district of Danbury, Docket No. CV-99 0337876S (May 22, 2000) (*Axelrod, J.*), citing *Don* v. *Don*, supra, 311–12. This court has neither been able to find nor have the parties furnished any case law to indicate that the analysis for a change of name is different under any of the three statutes. This court finds that there is a single rule for change of a minor child's name and that rule applies to all applications for change of a minor child's name regardless under which statute such a claim is brought. *Mayor* v. *Mayor*, 17 Conn. App. 627, 629, 633, 554 A.2d 1109 (1989).

The following is the single rule for change of name of a minor child under any of the three aforementioned statutes. "Whether an application for a change of name should be granted is a matter which rests in the sound discretion of the court. . . . In exercising that discretion, the court should bear in mind that, generally speaking, independently of any court order, a person is free to adopt and use any name he sees fit. . . . Ordinarily, therefore, an application for a change of name should be granted unless it appears that the use of the new name by the applicant will result in injury to some other person with respect to his legal rights, as, for instance, by facilitating unfair competition or fraud. . . . When

the question presented is whether the name of a minor child should be changed, the court, in line with its universal duty to protect the interests of minors, must take into consideration whether the change of name will promote the child's best welfare." (Citations omitted.) *Don* v. *Don*, supra, 142 Conn. 311–12.

The plaintiff, as the moving party, has the burden of proof. *Gardner* v. *Balboni*, supra, 218 Conn. 225; *Wheat* v. *Wheat*, 156 Conn. 575, 581–82, 244 A.2d 359 (1968). Courts have rejected the clear and convincing evidence test and applied the fair preponderance of the evidence test in making change of name decisions. *Peterson* v. *Peterson*, supra, Superior Court, Docket No. CV-99 0337876S.

It is of some interest to examine the facts and reasoning reported in change of name decisions. In *Peterson*, the trial judge found that "the new name of the minor child will not result in injury to some other person with respect to such person's legal rights." At the birth of the child, the mother, who was married to James Peterson, named the child Zane Cameron Peterson. DNA testing verified that James Peterson was not the biological father of the minor child and that the applicant, Frederick Silva, was the father. Pursuant to § 52-11, the trial court changed the child's name from Zane Cameron Peterson to Zane Cameron Silva applying the *Don* best interest of the child test.

In *Don*, the seven year old minor child, Rose Don, acting by her foster parents and next friends, Eugene Frankel and Lillian Frankel, petitioned the Superior Court under § 52-11, to change her name to Frankel. Her biological mother opposed the application. Rose was born in Brooklyn, New York, on March 17, 1948, and her birth certificate named her as Rose Don. Five days later, Rose Don began to live with Mr. and Mrs. Frankel in Hartford, and continued to do so throughout

the lawsuit. The Frankels never legally adopted Rose, and the biological mother was never removed as the guardian of Rose. Rose was known as Judith Ellen Frankel for as long as she lived with the Frankels. She was enrolled in school under that name. She was known in the neighborhood and by her friends as Judith Ellen Frankel. The trial court ordered the change of name to Judith Ellen Frankel, stating: "In the present case, on the facts found, there was no indication that to change the plaintiff's name would cause any legal injury to anyone. The most that could be said against it was that it might hurt the defendant's sensibilities. It did not, of course, make any change in the relationship of parent and child which existed between them. Furthermore, a change of the plaintiff's name to Judith Ellen Frankel was, under the circumstances, conducive to her welfare. Her home had been with the Frankels almost since her birth. In view of the fact that the court in the habeas corpus proceeding had refused to return her to the custody of her mother, there was every probability that she would continue to live with the Frankels for a long time in the future. Under these circumstances, it clearly would be wise for the child to bear the name of Frankel. The conclusion that to change her name would promote her welfare was warranted. It follows that it was well within the court's discretion to grant the application." *Don* v. *Don*, supra, 142 Conn. 312–13.

In *Downend* v. *Long*, Superior Court, judicial district of New London, Docket No. FA-01 0342574S (May 9, 2003) (*Bozzuto, J.*), the court stated: "The child's name shall not be changed from Kendall Long Downend." *Downend* was a contested dissolution action of a short term marriage involving a four year old minor child, issue of the marriage, in which the defendant wife wanted to change the name of the child to her maiden name.

The plaintiff here claims that the child has always lived in the United States and has never lived in Nigeria. She claims that the child's Nigerian name will cause the child problems with pronunciation by others who meet the child, problems with spelling and problems with a name inconsistent with Western culture. The plaintiff further argues that the child has been known for years by her friends and his friends in the United States as Cameron.

This court, applying the standards of *Don* to these claims, finds: (1) the interests of the defendant would be severely prejudiced by the change of name; (2) the plaintiff has failed to identify what the child's legal name is and, therefore, from what legal name the change is sought; (3) the plaintiff has permitted the following spellings of the child's name to occur in the Superior Court record: as to the first name–Nnamdi and Nnambi; as to the second name–Ikwunne, Ikwanne, Ikwane and no middle name; as to the last name–Okeke and Shockley-Okeke; (4) the plaintiff has not produced any proof that the child's last name was ever Shockley-Okeke; and (5) it is not in the best interest of the child to change his name. The day after his birth, the parties agreed on a name. The name was memorialized in writing on state approved forms: a paternity acknowledgment, now on file with the birth hospital; a Superior Court custody-visitation file; and a birth certificate. The Nigerian based name was agreed on by the parties. On this basis alone, the plaintiff's two claims for relief must be denied.

Our Appellate Court dealt with a name change in *Mayor* v. *Mayor*, supra, 17 Conn. App. 629. In that case, the plaintiff, Norman C. Mayor, brought an action against the defendant, his wife, Mariaelana Sparano Mayor, requesting a judgment dissolving the marriage and seeking custody of their minor child, Matthew. The matter was assigned for an uncontested hearing and,

at that hearing, the plaintiff, over the defendant's objection, requested that the court change the surname of the parties' minor child from Sparano to Mayor. She testified that his son was born on September 29, 1986, and that she gave her son the name on the birth certificate of Matthew Vincent Sparano. Sparano was the defendant's maiden name. She listed her own name on the birth certificate as Mariaelana Mayor but failed to state the name of the child's father. After brief argument by counsel, the trial court granted the plaintiff's request that the child's surname be changed to Mayor. The issue on appeal was whether the trial court properly exercised its jurisdiction by changing the name of the parties' minor child upon the request of one party. No guardian ad litem or attorney for the minor child had been appointed. The minor child was not a party in his parents' divorce.

The Appellate Court held: "The jurisdiction of Connecticut courts to effect changes of names has been carefully delineated by statute." Id. *Mayor* cited all three statutory authorities previously mentioned in this memorandum of decision. The Superior Court has concurrent jurisdiction with the Probate Court to grant changes of names. The Appellate Court applied the three statutes in the same fashion and held: "We conclude, on the basis of our review of these statutes, that the Superior Court did not have the jurisdiction to effect a change of name of a nonparty minor child incident to the dissolution of a marriage." Id., 630–31.

"We note initially that no statute is addressed specifically to the jurisdiction of the Superior Court to change the name of a minor child." Id., 631. "It is apparent from the clear words of §§ 52-11 and 46b-1 (6) that the legislature contemplated that a court should effect a change of name only in the context of an action brought for that purpose by the person desiring the change of name. We note that procedures for the initiation and

prosecution of such an action on behalf of a minor child are set forth in Practice Book § 105. On the basis of the express terms of §§ 52-11 and 46b-1 (6), we conclude that the trial court was without jurisdiction to change the name of a nonparty minor child incident to the dissolution of the parents' marriage." *Mayor* v. *Mayor*, supra, 17 Conn. App. 631–32. "Having examined all the statutes bearing on changes of name, we conclude that the legislature did not choose to grant the court jurisdiction to effect changes in the names of nonparty minor children incident to dissolutions of parents' marriages. A parent who wishes to effect a change of name for a minor child in the Superior Court must invoke the court's jurisdiction by proceeding under § 52-11 and must comply with the procedures established by Practice Book § 105." *Mayor* v. *Mayor*, supra, 633.

In this instance, there was no guardian ad litem, attorney or next friend appointed for the minor child, either in the Probate Court or the Superior Court. Neither the plaintiff nor the defendant made such a request. In effect, the plaintiff requested an order of the Probate Court on behalf of herself that a nonparty in the Probate Court proceeding, the minor child, have his name changed. This court concludes: (1) the Probate Court for the district of Stamford had no authority to entertain a change of name for the minor child since the minor child was not named as a party in the Probate Court; and (2) the child was not made a party in the present Superior Court appeal and, thus, this court has no authority to change the name of a minor child. On this basis alone, the plaintiff's first request for relief must be denied.

The plaintiff also requested that the birth certificate be changed to reflect the proper name. The plaintiff failed to produce a copy of the birth certificate to this court. Birth certificates cannot be changed by court order. *In re Michaela Lee R.*, 253 Conn. 570, 591, 756

A.2d 214 (2000). On this basis alone, the plaintiff's second request for relief must be denied.

The plaintiff appealed under § 45a-186, which provides in pertinent part: "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the Superior Court . . . ." The plaintiff has no standing to appeal since the real party in interest is the minor child, and the minor child was not a party in either court proceeding. *Mayor* v. *Mayor*, supra, 17 Conn. App. 630–31. On this basis alone, the plaintiff's two requests for relief must be denied.

This leaves the only remaining issue as to whether this child actually has a legal name. No authority has been provided for the procedure in Connecticut for establishing a person's name. By common law, any adult is free to adopt and use any name he sees fit. *Lewis* v. *Scoville*, 94 Conn. 79, 85, 108 A. 501 (1919). By custom, the biological parents agree on the child's name. There is no statute regarding the establishment of a legal name other than the three aforementioned change of name statutes. A naming ceremony is not customary in the United States. A naming ceremony is customary in many foreign countries, including Nigeria. A naming ceremony is customary in some religions by baptism. There was no baptism or naming ceremony in the present case. There is no Connecticut appellate or trial court case setting forth the procedure establishing a person's legal name in the first instance.

There is no law in Connecticut concerning the following legal name patterns: the proper use of junior, senior or a roman numeral after a name; whether a female can use junior, senior or a roman numeral after her name; the proper number of middle names; the use of a single capital letter in substitution of a first or middle name; the use of a single capital letter as a last name;

the use of a number in a name, such as CP30; the selection of a name not matching the sex of a child; the use of a commonly recognized last name as a first name; the repetition of the same word three times as first, middle and last name, such as Smith Smith Smith; the varieties of spellings of what for generations was a commonly spelled name; the use of a location as a name such as Paris Hilton or Kazakhstan Hilton; and, the variety of pronunciations of a name spelled one way or the same pronunciation of a name spelled a variety of ways.

In researching this decision, the court has inquired of dozens of Connecticut lawyers and judges, and no one has supplied even a portion of an answer to the question: How is a person's legal name established? The value of a person's name has been discussed by philosophers and playwrights for centuries. "Regard your good name as the richest jewel you can possibly be possessed of . . . ." Socrates (469 B.C.–399 B.C.). "What's in a name? That which we call a rose by any other word would smell so sweet." W. Shakespeare (1564-1616), Romeo and Juliet, act II, scene ii, line 43.

Connecticut has a paternity acknowledgment statute: § 46b-172. It only applies to a child born out of wedlock. The use of the paternity acknowledgment form signed by both unmarried parents is in lieu of a formal paternity petition initiated under General Statutes § 46b-160. These two statutes do not apply to parents married to each other. These two statutes do not establish the legal name of the child, which is the subject of either a paternity petition or a paternity acknowledgment. Only the parenthood of the child is established. The paternity acknowledgment "shall be on forms prescribed by the Department of Public Health." General Statutes § 46b-172 (a) (3). "All acknowledgments . . . executed in accordance with this subsection shall be

filed in the paternity registry established and maintained by the Department of Public Health under [General Statutes §] 19a-42a." General Statutes § 46b-172 (a) (3). Section 19a-42a contains no mention of establishing the child's legal name. By common law, a minor child born during its parents' marriage is presumed to be the issue of that marriage. *Schaffer* v. *Schaffer*, 187 Conn. 224, 226, 445 A.2d 589 (1982). This common presumption does not establish a child's legal name.

If a child is born out of wedlock in a Connecticut hospital, the hospital "shall provide an opportunity for the mother and putative father to complete a birth certificate and an affidavit of parentage." General Statutes § 19a-505a. There is no other reference in the statutes to "an affidavit of parentage." Presumably, it is the paternity acknowledgment of § 46b-172. An affidavit of parentage has also been referred to as an amendment to an already filed birth certificate in which a change of parentage on the birth certificate is registered. *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 116, 429 A.2d 833 (1980). In *Remkiewicz*, the affidavit of parentage was signed and filed with the bureau of vital statistics to change the child's birth certificate to reflect the defendant as her father. The defendant was neither the biological nor the adoptive father of the minor child. The defendant was found not to be responsible to pay child support, and the "affidavit of parentage" was not binding.

The mandatory requirements for birth certificates for children born in Connecticut are stated in General Statutes § 7-48 (a): "a birth certificate shall be filed with the registrar of vital statistics in the town in which the birth occurred . . . ." The section is mandatory if the birth occurs in a hospital, subsection (a); en route to a hospital or at another institution, subsection (b); outside an institution, subsection (c); or, in a moving conveyance, subsection (d). General Statutes § 7-48. This

statute only requires a mother or father to file a birth certificate where the birth does not occur in a hospital or other institution or when no physician or midwife either attends the birth or offers postbirth assistance. Only in that unlikely event does it appear that a birth certificate form must be filed by a parent. In all other regards, the statutes do not require parents to fill out a birth certificate because the statutory obligation to file birth certificates is on the hospital institution, physician or midwife. Placing the name of the minor child on a birth form is not a statutory requirement even though the forms routinely contain a preprinted section for the child's name.

By statute, the birth certificate is to contain the name of the birth mother. General Statutes § 7-48a. In 1967, the requirement that the father's name be placed on the birth certificate was removed. Public Acts 1967, No. 146; General Statutes § 7-48. If a licensed person fails to file a birth certificate, their license can be suspended. General Statutes § 7-49. The statutes restrict the information placed on the birth certificate. General Statutes § 7-50. The child's name is not required to be placed on the birth certificate. General Statutes § 7-50. The state regulations concerning birth certificates are silent on confirming the child's name. Even when the mother and father are the statutory birth reporters, certain detailed information must be provided, but the child's name is not required. Regs., Conn. State Agencies § 19a-14-1.

The only statutory reference to the phrase "legal name" is in General Statutes § 7-36 (10), relating to the definition section of the duties of the registrar of vital statistics: " 'Amendment' means . . . (C) change a certificate of birth, marriage, death or fetal death to reflect facts that have changed since the time the certificate was prepared, including, but not limited to, a legal name change or a modification to a cause of death." The

statutes are silent on how a person initially determines a "legal name." The twenty-eight statutes that refer to "birth certificate" are silent on the method of initially establishing a person's "legal name." Thirty-five Connecticut state regulations refer to the term "legal name," requiring that various documents and forms contain the "legal name," "full legal name" or "exact legal name," but those regulations are silent on the method of initially establishing a person's "legal name."

The only state regulation that refers to methods of establishing a person's "legal name" is relative to obtaining a motor vehicle operator's license. "[T]he commissioner shall presume that the name of the applicant as shown on the applicant's birth certificate, or other primary document submitted as evidence of the applicant's identity, is the legal name of the applicant, and the commissioner shall not place any other name on a motor vehicle operator's license unless the applicant presents an order of the superior court, or other court of competent jurisdiction, pertaining to a change of the applicant's name." Regs., Conn. State Agencies § 14-137-63 (b). "[T]he commissioner shall accept an original or certified copy of a marriage license or divorce decree for the purpose of establishing the applicant's legal name to be placed on the operator's license issued to the applicant." Regs., Conn. State Agencies § 14-137-63 (c).

The plaintiff has taken it upon herself to ask for a change of name. She refers to her son in the motion for appeal from probate and reasons for appeal as Nnamdi Ikwanne Shockley-Okeke, also known as Nnamdi Shockley-Okeke, also known as Nnambi Ikwanne Shockley-Okeke, also known as Nnamdi Ikwunne. She requests that her son's name be formally changed to Cameron Nnamdi Shockley-Okeke. That application having been denied by the court, the question before the court now is: What is the name of the minor child?

The court finds that the legal name of the minor child is as acknowledged by both the parents of the child in the acknowledgment of paternity that is on file both in the present case and in the companion custody and visitation case. A similar method of assigning a legal name to a minor child has been approved in *Don* v. *Don*, supra, 142 Conn. 313, and *In re Tanaja G.*, Superior Court, judicial district of Hartford, Juvenile Matters, (April 28, 2000) (*Keller, J.*). These are the only two Connecticut court decisions which, in any way, refer to a court determining a minor child's original legal name. The acknowledgment of paternity in the present case was signed the day after the child's birth.

This court determines that the minor child has been known and is now known and will continue to be known by the following legal name: Nnamdi Ikwunne Okeke.

The plaintiff's appeal is dismissed.